**THOMAS, Plaintiff, v. DYE et, Defendants.**

Common Pleas Court, Franklin County.

No. 180812.  Decided September 11, 1953.

392

James M. Hengst, Columbus, for plaintiff.
Maugan & Vacca, Columbus, for defendant.

## OPINION

By BARTLETT, J.

HELD THAT THE ACCOUNT AT THE BUCKEYE FEDERAL SAVINGS AND LOAN ASSOCIATION IN THE NAME OF OLETA SINCLAIR DYE WAS SET ASIDE AS A LIVING PERFECT TRUST FOR THE BENEFIT OF ELEANOR THOMAS, NOW DECEASED, AND JOHN S. THOMAS: AND THAT SAID TRUST SHOULD BE TERMINATED.

THE COURT, THEREFORE, ORDERS SAID ACCOUNT PAID TO JOHN S. AND EDWARD S. THOMAS.

This is an action for a declaratory judgment as to ownership of a savings account in The Buckeye Federal Savings and Loan Association. The claimants on one side are the plaintiff, John S. Thomas, and the defendant, Edward S. Thomas, who are brothers; and on the other side are the defendants, Flora Elder Dye, individually and as executrix of the Estate of her deceased husband Clair Albert Dye, known as Dean Dye due to his long connection with Ohio State University, and William L. Maugan, as administrator of the estate of Oleta Sinclair Dye. When the Buckeye federalized, a search for the ownership of dormant accounts brought to light this account standing in the name of Oleta Sinclair Dye in the sum of $6900.00.

Oleta Sinclair Dye was the first wife of Dean Dye and the petition alleges that on October 18, 1922, she executed a declaration of trust in writing attached to the petition and known as exhibit "A" in which she declared herself as holding in trust all her property for her use and benefit during her life, after her death for the use and benefit of her husband,

Dean Dye, during his life, then for the education of Eleanor Thomas and John S. Thomas, and any residue thereafter, to be divided equally between said Eleanor and John S. Thomas.

Oleta Sinclair Dye died in 1924, after establishing this so called declaration of trust, leaving her estate in possession of her husband, Dean Dye, as they had no children. This account consisted of running stock in the Buckeye which Dean Dye never changed to his name, and there was never any administration of her estate. Dean Dye educated and in part supported Eleanor Thomas who died intestate in 1929, leaving as her sole heirs, John S. Thomas and Edward S. Thomas. Dean Dye died in 1949 intestate, leaving Flora Elder Dye as his widow and sole legatee. Oleta Sinclair Dye was a sister of Tempe S. Thomas, the mother of John S., Eleanor and Edward S. Thomas, and their father, a Columbus attorney, died in 1916, leaving Edward S. then in law school and the other two young children, ages about 6 and 8 years. A close attachment apparently existed between the Dye and Thomas families and due to the death of their father, the relationship naturally became closer since the Dyes had no children of their own. Eleanor was a student at Columbus School for Girls and the Dyes contributed to her education there; and in 1922 Mrs. Dye learned she was suffering from cancer, and shortly thereafter executed the purported declaration of trust. There is evidence that the deposits came from an inheritance from her family, and she never made any withdrawals from the account which grew with the years.

The purported declaration of trust was in the handwriting of Oleta Sinclair Dye and was found by the wife of Edward S. Thomas among the personal belongings of Tempe Thomas after her death in 1943; and said paper reads as follows:

"October 18, 1922

"Tempe and Edward:

Clair has assured me that he will see that Eleanor and John are educated. But in case anything prevents his doing so, I want to leave this as my last will and I wish all my money and possessions to be used to educate and take care of Eleanor and John—My jewelry to Eleanor—In case Clair remarries (which I hope he shall and have a home) I want Eleanor to have my linens, silver, china and the old furniture, which belonged to Mother. They would not mean anything to a stranger—The Bureau that Bella has was given to me by Mother and was to return to me after Bella was thru with it.

"My share of our possessions to be used by Clair as he sees fit and then at his death to be given as above stated to educate Eleanor first and if any left educate John—and residue

if any, divided equally. Have expressed my wishes to Edward, personally and hope he will see that they are carried out.

/s/ Oleta Sinclair Dye"

The owner of personal property may by an oral or written declaration, without any consideration, declare himself trustee of the property for a beneficiary. The declaration must, however, be complete and in praesente, for the reason that the creation of a voluntary trust must amount to a complete transfer of the equitable interest. Such a declaration is effective to transfer the equitable interest to cestui que trust. Such a trust, which is made to take effect after the death of declarant, being complete and thus creating a perfect trust, is not testamentary and is valid though the will's act is not complied with. **Bruer v. Johnson, 64 Oh St 7; Lamkin v. Robinson, 16 Oh Ap 440; Jones v. Luplow, 13 Oh Ap 428; Worthington v. Redkey, 86 Oh St 128.**

The intention to become a trustee in a present trust must be clearly expressed. **Flanders v. Blandy, 45 Oh St 108.** Generally, intention to create a trust may be determined by construction of and inference from what the trustor has said or done, the nature of the transaction, and surrounding circumstances. A trust based upon such determination of intention to create it by construction and inference is an express trust. 3 Pomeroy Equity Jurisprudence (5th Ed.) Sec. 1011. The inference may be made from declarations construed in the light of the situation and relation of the parties, the character of the property, and the purpose of the one making the declaration. 54 Am. Jur. Trusts, Sec. 53, p. 62-63.

Counsel for plaintiff argue that the evidence adduced at the trial developed the fact that Oleta Sinclair Dye had created this trust at the inception of the savings account in 1914, instead of the trust having been originally created by her declaration of 1922, and that this declaration was only an additional manifestation of the creation of such trust. On the other hand counsel for Flora Elder Dye charge that this constitutes a change of cause of action, since the allegations of the petition rely solely on the alleged written declaration of trust, and that plaintiff cannot vary that declaration by verbal testimony.

The court is inclined to the view that counsel approaches the problem with a construction too narrow to be justified. After all, the writing itself is only evidence which must be construed in the light of the surrounding circumstances as heretofore pointed out.

"The fact that one seeking recovery of property founds the claim on an express trust, and disclaims a resulting one, does

not prevent the court from treating it as the latter if it is such in fact." 54 Am. Jur. Trusts, Sec. 601, p. 465.

"An express agreement to the same effect as a resulting trust does not preclude the existence of the resulting trust, where the essential elements of a resulting trust are present." 54 Am. Jur., Trusts, Sec. 195, p. 154.

It would seem to follow that a written declaration of trust at a later date should not preclude the existence of an implied trust to the same effect, founded in parol and upon the acts and conduct of the creator of the trust. In fact the creator of the implied trust of 1914 may have had a very substantial legal reason for the written manifestation of such trust. This will be discussed later.

"Transfer and delivery of the res or trust instrument are not required to a declaration of trust." 54 Am. Jur., Trusts, Sec. 42, p. 53.

"2. It is not necessary to a completion of such trust that the settlor part with the possession of the trust property." **Jones v. Luplow, et al., 13 Oh Ap 428.**

J. Farr, in delivering his opinion in the foregoing case, at p. 434 says:

"The strong weight of authority is to the effect that the creation of a trust, if otherwise unequivocal, is not affected by the settlor's retention of the instrument of trust, especially where he is himself the trustee."
followed by the citation of numerous authorities.

"A trust may be completely created without any necessity of, or requirement for, notice to the cestui que trust. Its creation is entirely with the settlor, and if his intention is clear, and the requisite acts are done by him, notice or knowledge or acceptance on the part of the beneficiary is not required." **40 O. Jur., Trusts, Sec. 30, p. 164;** and

"It is unnecessary to give the trustee notice of his appointment as trustee. He may not learn of the appointment for years after it is made, and yet the trust may be perfectly created. His conduct may amount to approval." **40 O. Jur., Trusts, Sec. 31, p. 164.**

"Usually, however, since the creation of the trust is beneficial to the cestui que trust, his approval may be presumed." **40 O. Jur. p. 164,** supra; "and since, however, any grant is presumed to be beneficial, in the absence of a refusal to act the trustee is presumed to accept the trust." **40 O. Jur., Trusts, Sec. 59, p. 204; Harvey v. Gardner, 41 Oh St 642.**

In view of the normal relation and conduct between husband and wife toward the objects of their bounty and affection, there is ample evidence in the record to warrant the

conclusion that Dean Dye knew of his first wife's declaration of trust; and that his conduct amounted to an approval and acceptance thereof.

Counsel for Flora Elder Dye rely on the statute of limitations as a defense. A trust exclusively within the jurisdiction of equity is not barred by time. **Paschall v. Hinderer, 28 Oh St 568.** Lapse of time is generally no bar between a trustee and a cestui que trust. **Williams v. Presbyterian Society, etc., 1 Oh St 478**; but otherwise where trustee disclaims the trust. **Carpenter v. Canal Co., 35 Oh St 307, 317.**

It is argued by counsel for the present Mrs. Dye that the trust, if any, was terminated upon the completion of the education of Eleanor and John, more than six years prior to the filing of the instant action; but this contention overlooks the fact that this trust is not even confined to the education of the cestui que trust, since the declaration expressly states, "to educate and **take care** of Eleanor and John" (emphasis ours), and "residue, if any, divided equally." This then is not a trust for certain purposes which leaves a surplus after the trust is fully performed, where it becomes a question of the persons for whom the trustee shall hold it in trust **(40 O. Jur. p. 251)**, since the trust declaration expressly provides the "residue, if any, divided equally" between Eleanor and John, and the distribution of the residue would be in his capacity as trustee. The matter being solely between the cestui que trust and the trustee, the statute of limitations has no application, unless the statute has been set in operation by a "sufficient manifestation of renunciation of the trust duties to constitute notice to the cestui que trust." **40 O. Jur., Trusts, Sec. 59, p. 205.** Such statute cannot be put in operation unless cestui que trust has notice. Moton v. Dewell, 13 C. C. (N. S.) 81; **16 O. Jur., Equity, p. 278.**

"The conduct of the trustee must have amounted to an open repudiation; a mere technical breach * * * without other circumstances indicating a position adverse to the trust, would not destroy the continuity of the latter. This would be especially true if the trustee and the beneficiary were near relatives, as where the former stood in loco parentis to the latter, for in such cases, the presumption would be against the repudiation of the trust." **16 O. Jur., Equity, p. 122.**

There is not the slightest evidence in the record of this case, of the trustee's repudiating the trust.

"It is quite significant that," the character of the deposit never changed, "it so remained for eighteen years, which fact alone, that is, lapse of time, discloses the idea of permanence and corroborates the theory of a trust." Jones v. Luplow, supra,

and this would be especially true as to the trustee, reflecting by his conduct, his approval and acceptance of said account as a trust. **40 O. Jur., p. 164,** supra, even to the extent of not having it administered as an asset of the estate of his deceased wife.

Counsel for the present Mrs. Dye assert that the words "will" and "wish" in the paper Exhibit "A" are of a purely testamentary character.

The word "desire" is sufficient to impress a trust upon property in the hands of the immediate devisee in favor of others. **Brasher v. March, 15 Oh St 103.** Where it appears the testator intended to charge property in the hands of his immediate devisee with a trust for others, courts will give effect to that intention, whether the terms used be, in form, dispositive, peremptory or precatory only. Ide, Executor, v. Clark, et al., 5 C. C. 239. Where the giver has recommended or entreated or wished to dispose of property in favor of another, the recommendation, entreaty or wish shall be held to create a trust. The words "will and direct" are as strong and imperative as any words in the English language. Kilquor v. Hey, et al. 19 C. C. (N. S.) 81, 83. Then, too, the natural claims which the proposed beneficiaries might have on the testator's bounty would be strongly influential. Colton v. Colton, 127 U. S. 300.

At the time the deposits in this account were made, §8617 GC, merely provided:

"All deeds of gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making them, shall be void and of no effect."

This section was amended effective August 14, 1921, and a year prior to execution of the paper Exhibit "A," whereby the following provision was added:

"But the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator * * *."

The case of **Union Trust Co. v. Hawkins, 121 Oh St 159** involved the construction of two agreements, one before and the other after the amendment of §8617 GC, supra. The Supreme Court of Ohio, through Marshall, C. J., made a scholarly and exhaustive review of the common law on trusts, and then held in that case:

"The amendment of §8617 GC, effective August 14, 1921, authorizes a trust agreement, including the power to alter,

amend or revoke the trust, and by virtue of that amendment a trust agreement making a transfer or conveyance of property including such power and to take effect at the death of the creator of the trust, will effect such transfer and conveyance, although the instrument be not executed in conformity with the law of wills."

On page 178 of his opinion in the Hawkins case, supra, Marshall, J., says:

"Having reached the conclusion that the trust agreement in the instant case retained such control and dominion of the property and reserved such rights to alter and revoke as to render it invalid at common law to effect a gift either **inter vivos** or **causa mortis** in favor of the beneficiaries named, it remains to determine the effect of §8617 GC thereon."

Marshall, C. J., then calls attention to the amendment of §8617 GC, supra; and states that "the original trust agreement made no attempt to make any disposition of property, or to give any control of it beyond the date of the death of the creator;" and, "It is evident that the supplemental agreement was executed as a result of the amendment to §8617 GC, upon the theory that by virtue of the amendment of that statute, the trustee could be given the power to make distribution of property after death in accordance with the expressed wishes of Mrs. Hawkins by virtue of a trust agreement and without conformity with the statute of wills."

On page 179, Marshall, C. J., continues:

"This record therefore clearly presents the question whether by a trust agreement not executed in accordance with the statute of wills the creator of a trust can empower a trustee to make distribution of property, in accordance with the expressed wishes of the creator of a trust, after the death of the creator. A decision of this case requires an interpretation of the Amendment to §8617 GC.

"Sec. 8617 GC, prior to its amendment in 1921, in terms declared all deeds of gift and conveyances of real or personal property in trust for the use of the creator to be void and of no effect.

"The amendment of 1921 followed the decision of **Worthington, Admr., v. Redkey, Exr., 86 Oh St, 128,** 99 N. E., 211, and it is claimed that the amendment was designed to obviate the force and effect of that decision. If such was the purpose, that purpose was not definitely and clearly expressed, but, if it was not the purpose, then it is difficult to give the amendment any intelligent or practical application. It is a well-settled canon of interpretation of an amendment to a statute that the Legislature will be deemed to have intended some

practical change to existing legislation. Prior to the rehearing, a majority of this court had reached the conclusion that the amendment was only declaratory of the common law, and that it was intended to make trusts to the use of the maker valid as to all persons except creditors of the creator. While the language of the amendment is susceptible of such an interpretation, it is also susceptible of the interpretation that it is valid as to the heirs and next of kin, and that it may operate as a devolution of property after death without being executed with the formalities of a last will. It is quite certain that it has been so regarded and trust agreements have been made since that amendment to such an extent as to have become a rule of property. Large estates have been distributed on the faith of their validity and in accordance with the expressed wish of the creators. These distributions should not be disturbed at this time upon a doubtful interpretation of ambiguous legislation. After all, it is a matter which is within the power of the General Assembly, and, if it becomes unsatisfactory in operation, the Legislature can surround it with appropriate safeguards. It is in the power of the Legislature to amend or even repeal the statute of wills. It may provide for the private settlement of estates, and without probate or other public administration.

"Upon the authority of the amendment to §8617 GC, the judgments of the lower courts will be reversed."

The declarations and conduct of the settlor, Oleta Sinclair Dye, coupled with the deposits, undoubtedly, constituted satisfactory evidence of the establishment of an existing express trust agreement in parol.

It is significant that after the amendment of §8617 GC in 1921, the purported written manifestation of such trust was executed in 1922. It may well be that such amendment was the incentive for the written declaration, since the amendment, as heretofore stated, would afford a substantial reason for such further manifestation of the intention of the settlor to create an express and existing trust.

In any event, the court is of the opinion that the amendment of §8617 GC, supra, makes obsolete many of the objections of counsel for Flora Elder Dye.

"2. **Sec. 8617 GC**, which provides that a revocable and amendable living trust 'shall be valid as to all persons' except creditors, does not deprive the settlor of all dominion over the trust res so that a widow electing to take under the statute of descent and distribution is barred from claiming a distributive share of the property in such trust.

"3. The transfer of property to a trustee under an agreement

whereby the settlor reserves to himself the income during his life with the right to amend or revoke, is valid by virtue of §8617 GC, but under such a trust agreement settlor does not part absolutely with the dominion of such property and his widow electing to take under the statute of descent and distribution may assert her right to a distributive share of the property in such trust at settlor's death." **Bolles v. Toledo Trust Co., 144 Oh St 195.**

Turner, J., in delivering the opinion of the court in the Bolles case, supra, on p. 215 says:

"We may go a step further and say that irrespective of the husband's intention, if the effect of the device resorted to is such as to cut down or deprive the widow of the right given her under §10504-55 GC, **such device is voidable when challenged by the widow.** (Emphasis ours.)

"We are of the opinion that a wife's right to elect to take under the law places her in a higher position than a mere creditor in respect of the personal property in an unrevoked revocable trust."

It will be seen, therefore, that in Bolles case, supra, the Supreme Court of this state held that the right of the settlor to create the amendable and revocable trust under §8617 GC, supra, was voidable when challenged by the widow. This, however, is the personal right of the surviving spouse, and will be deemed waived, if not exercised during their life time. So in the instant case, Dean Dye, not having challenged the trust in this account, the trust is valid and binding against the second Mrs. Dye. It certainly will not be claimed that she had any legal rights in the estate of the first Mrs. Dye.

"Under the provisions of §8617 GC, the transfer of property to a trustee is valid under an agreement whereby the settlor reserves to himself the income during his life with the right to amend or revoke; but when such settlor does not part with dominion and control over the trust property, his widow may elect to take under the statutes of descent and distribution and **may assert her right** to a distributive share of such property after his death." (Emphasis ours.) **Harris v. Harris, 147 Oh St 437.**

"3. A, owner of shares of stock in a corporation, without consideration paid her and without any writing, procured for some of such stock a certificate in the name of A as trustee for H, **held** that such donor or trustor had the right to reserve for herself the income of the property for life, the revocation of the trust in whole or in part, or the consumption of the principal." **Fifth Third Union Trust Co., etc. v. Foss, Exrx., 29 O. O. 546.**

Mack, J., delivered an opinion in the foregoing case and on page 548 says:

"As such 'donor,' 'settlor' or 'trustor' (**Ulmer v. Fulton, Supt., 129 Oh St., 323 at 339, 2 O. O. 326**), she had the following rights and powers with reference to the two trust certificates, viz.:

" 'By weight of authority, a trust, otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) the use of the property and the income therefrom for life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or in part; (5) the consumption of principal,'

"**Cleveland Trust Co. v. White, 134 Oh St,** at 6 and 7."

Turner, J., in the Bolles case gave an exhaustive and learned review of the Ohio cases on revocable living express trusts, and on page 223, says: "The foregoing quotations illustrate what anyone studying the cases must conclude that these trust cases have been decided on their particular facts * * *."

So too, in the instant case, the court, assisted by the principles announced in the foregoing citations, finally must make its decision on the particular facts in this case.

The court, therefore, finds and declares that Oleta Sinclair Dye created a living express and perfect trust of the account in question by self declaration, both by conduct and word, coupled with the deposits made in the account in her name; and especially in view of the further written manifestation of her intention to create such a trust, and in light of the fact, that such further written manifestation was executed by her, after the amendment of §8617 GC, supra, the court finds the record discloses clear and satisfactory evidence that she so intended to create a present and perfect trustee, first in herself as trustee, then in her husband, Dean Dye, and finally in Edward S. Thomas, as such trustee.

The court further finds that said trust should be terminated, and so orders; and further orders the Buckeye Federal Savings and Loan Association to pay said account to John S. Thomas and Edward S. Thomas in accordance with the prayer of the petition.

Entry accordingly with exceptions by counsel for Flora Elder Dye individually and as executrix of Dean Dye's estate and the executor for Oleta Sinclair Dye.