**THOMAS, Plaintiff-Appellee, v. DYE et, Defendants-Appellants.**

Ohio Appeals, Second District. Franklin County.

No. 5046. Decided November 18, 1954.

James M. Hengst, Columbus, for plaintiff-appellee, and for Edward S. Thomas, defendant-appellee.

Maugan & Vacca, Columbus, for defendants-appellants.

## OPINION

By THE COURT.

This is an appeal on questions of law and fact from a declaratory judgment in behalf of plaintiff. The action was to determine the ownership and right to personal property and an account in The Buckeye State

Building and Loan Company, later The Buckeye Federal Savings and Loan Company, in the name of Oleta Sinclair Dye. The account at the time of the trial amounted to about $7000.00. The husband of Oleta Sinclair Dye was Clair Albert Dye. both of whom are deceased. Defendant Flora Elder Dye was the second wife of Clair Dye, Eleanor Thomas and John Thomas were niece and nephew of Oleta Sinclair Dye, and their family and the Dyes were very close. Eleanor was several years older than John. Oleta Sinclair died on April 21, 1924. She left her husband as her sole neir at law and no will. When the last deposit was made on the above mentioned account it was only of the amount of $1857.65. Sometime, probably 1921 or earlier, Mrs. Dye learned that she was suffering from cancer and no doubt this knowledge of impending death was in her mind and purpose when she prepared the written instrument in 1922, hereinafter referred to, and made the statement appearing in the record. The savings account was opened in 1914 about the time that Mrs. Dye received $178.75 as final distribution in the estate of James H. Sinclair, a brother, which proceeds were, probably, the initial deposit. The increase in the amount of the deposit was largely by reason of the accumulation of interest thereon.

Edward Thomas and Tempe S. Thomas, a sister of Mrs. Dye, were father and mother of Eleanor and John Thomas. Subsequent to Mrs. Thomas' death, probably in 1943, a letter, or an instrument, which is hereinafter set out, Plaintiff's Ex. A, was found among the personal effects of Mrs. Thomas.

Eleanor Thomas was educated in the Columbus School for Girls and in Ohio State University, died after she had completed a course there, and was awarded her A. B. degree posthumously. She died April 25, 1929, intestate, leaving as her sole heirs at law, John S. Thomas, plaintiff, and Edward S. Thomas, named as a defendant. Clair Dye died testate in 1949 leaving his estate to his second wife, Flora Elder Dye.

The action is instituted by John S. Thomas. The petition avers that, "On October 18, 1922, Oleta Sinclair Dye executed a declaration of trust in writing," a copy of which is incorporated in. the petition, "wherein and whereby she declared herself to hold in trust all property of every kind and description, the title to which was then vested in her, for her use and benefit during her lifetime; after her death, for the use and benefit of her husband, Clair Albert Dye, during his lifetime, then for the education of Eleanor Thomas and John S. Thomas; any residue thereafter to be divided equally between said Eleanor Thomas and John S. Thomas."

The writing referred to in the petition as a declaration of trust and introduced as Plaintiff's Ex. A, is as follows:

"October 18, 1922

"Tempe and Edward:

"Clair has assured me that he will see that Eleanor and John are educated. But in case anything prevents his doing so, I want to leave this as my last will and I wish all my money and possessions to be used to educate and take care of Eleanor and John * * * My jewelry to Eleanor * * *

"In case Clair remarries (which I hope he shall and have a home) I want Eleanor to have my linen, silver, china and the old furniture. which belonged to Mother. They would not mean anything to a stranger—the Bureau that Bella has was given to me by Mother and was to return to me after Bella was through with it.

"My share of our possessions to be used by Clair as he sees fit and then at his death to be given as above stated to educate Eleanor first and if any left educate John—and residue if any, divided equally. Have expressed my wishes to Edward, personally and hope he will see that they are carried out.

/S/ Oleta Sinclair Dye"

The petition sought a judgment declaring that Oleta Sinclair Dye established a trust in all of her property including the running stock account: that she, originally, and her husband, Clair Albert Dye and brother Edward S Thomas successively were trustees thereof; that the trust has terminated according to the provisions thereof and that the plaintiff, John S. Thomas. and defendant, Edward S. Thomas, are entitled to three-fourths and one-fourth, respectively, of said running stock account and any other property in said trust. The prayer was that the Building and Loan Association be instructed to pay the proceeds of the stock account to the aforesaid parties in the proportions to which it is alleged they are entitled.

. William L. Maugan, administrator of the estate of Oleta Sinclair Dye, deceased. was made a party defendant and answered. He sets up nine defenses, the effect of which is to deny the averments of the petition and to require a declaratory judgment to the effect that Oleta Sinclair Dye did not establish any trust as alleged, that the instrument heretofore quoted is not a will, a trust or a gift, that the running stock account upon the death of Oleta Sinclair Dye passed by the statute of descent and distribution to Clair Albert Dye and that the administrator of her estate is entitled to the proceeds of the account.

The widow of Clair Albert Dye, his second wife, Flora Elder Dye, answered in nine defenses asserting the same subject matter by way of defense and asking the same relief as in the answer of the administrator of the estate of Oleta Sinclair Dye.

Defendant, Edward S. Thomas, answered substantially in the terms of the petition and asked like judgment. Flora Elder Dye as executrix . of Clair Albert Dye, deceased, answered substantially as in her individual answer  Plaintiff replied in denial to the answer of Flora Elder Dye, individually. and as executrix, and replied in like manner to the answer of the administrator of Oleta Sinclair Dye.

Upon the issues thus made, the cause came on for hearing to Honorable John R. King, and the testimony was concluded before him, but he died before an opinion was rendered. The cause then was assigned to another Common Pleas Judge and the record is made up of the testimony taken at both hearings.

The appeal is on questions of law and fact and we must pass de novo upon the issues joined, evaluate the testimony and determine its probative effect.

Hereafter we refer to Oleta Sinclair Dye as Mrs. Dye; to Clair Albert Dye as Dean Dye, as he is frequently spoken of in the record; to Flora E. Dye as the second Mrs. Dye.

Counsel for the parties have filed most comprehensive and voluminous briefs, discussing the subject of trusts at great length and with many citations. We will not cite such extended authority because we believe the principles upon which we determine the case are well established.

A trust in personal property may be established orally, or in writing, by the declaration that the settlor holds the property in trust for another or by naming another trustee. The declaration must be a completely executed transaction in praesenti. **Bruer v. Johnson, 64 Oh St 7,** citing Perry on Trusts, Section 86. An express trust is raised and created by the act, consent, and mutual understanding of the parties. **Faurot v. Neff, 32 Oh St 44; Ulmer v. Fulton, 129 Oh St 323.** If the trust is created, although it is designed to operate after the death of the declarant it may be effective, Bruer v. Johnson, supra, and of course, a trust can be created by testamentary disposition of real or personal property. The intention to create a trust must be unequivocal and acts in furtherance of the purpose must also appear. If the settlor declares himself trustee, of property for a beneficiary, the declaration must be complete and in praesenti and the creation of the trust must amount to a complete transfer of the equitable interest **Lamkin v. Robinson, 16 Oh Ap 440.** Neither the beneficiaries nor the trustee need be notified of the creation of the trust, although lack of notice to the trustee may be of some weight as evidence against an intention to create a trust on the part of the settlor, **40 O. Jur. 165.** The burden of proving an oral express trust is upon the one alleging its existence, **Gano v. Fisk, 43 Oh St 462; Merchant v. German Building & Loan Company, 1 Oh Ap 47.** The proof of the creation of the trust must be established by clear and convincing evidence, both as to declarations, terms and the conditions of the trust. **Russell v. Bruer, 64 Oh St 1; Boughman v. Boughman, 69 Oh St 273;** De Lacroix v. L. E. Concrete Steel Company, **8 O. N. P. N. S. 489; Held v. Myers, 48 Oh Ap 131.** Prior or contemporary declarations of the settlor are competent to prove an oral trust, but subsequent declarations are not admissible, for at that time the settlor has no interest in the trust res, and to permit his subsequent declaration would be too serious a menace to security of titles. **Harvey v. Gardener, 41 Oh St 642.** This case treats of real property but the principle announced is applicable to a trust where the res is personal property.

. Having stated the principles of law which must shape our determination of the issues, we consider the evidence and will set forth practically all of the testimony, excepting some corroborating circumstances, tending to prove the creation of the trust pleaded.

Sec. 8617 GC, effective August 14, 1921, does not materially affect the law of this case. If it did, it would control only the construction of plaintiff's Ex. A. and not the alleged oral declarations which were probably made prior to August 14, 1921. Nor is there any question of the right of the settlor of a living trust to retain the res during life and to alter, amend or revoke the trust. **Union Trust Co. v. Hawkins, 121 Oh St 159; Bolles v. Toledo Trust Co., Exr., 144 Oh St 195.**

As we have heretofore indicated, upon the pleadings the claim of the plaintiff is based entirely upon the written instrument. Plaintiff's Ex. A, and the first hearing proceeded entirely upon that theory. At the second hearing, the plaintiff relied considerably upon and emphasized the claim that the trust was created orally and prior to the writing of Exhibit A.

We are satisfied that if any trust is created, it must be determined by the language of Exhibit A. The other testimony is entirely inadequate to support the claim of an oral declaration of a trust.

If Exhibit A were a will and if it incorporated a valid living trust, there-

tofore created, it would be admissible as corroborative of the creation of such trust. If Exhibit A purports to create a living trust and is ambiguous the oral testimony as to the declarations of Mrs Dye as to her intention and purpose would be admissible.

The writing, Exhibit A, in our judgment is testamentary in character, is not ambiguous as it relates to any trust property and establishes no trust. It could not become effective as a will because it was not properly executed. It undertook upon a stated condition to make disposition of all of the estate, money and possessions of Mrs. Dye. Upon the marriage of Clair Dye certain effects were given to Mrs. Morrow.

The first sentence of the instrument is vital: "Clair has assured me that he will see that Eleanor and John are educated " Then follows significant language: "But in case anything prevents his doing so, I want to leave this as my last **will** and I wish all my money and possessions to be used to educate and take care of Eleanor and John." (Emphasis was made by the writer of the instrument.)

This instrument indicates complete confidence of the writer that her husband would see that Eleanor and John were educated. If he did so, her prime purpose was consummated. If the instrument had been probated as a will, its dispositive provisions, at least as to everything but household effects, were effective only if the husband, Clair Dye, failed to do that which was enjoined upon him. His inability to educate Eleanor and John is the condition upon which she leaves "this as my last **will**." Had Dean Dye failed to meet his obligation, or how the provision for Clair and disposition of property upon his marriage or upon his death would be construed, if the instrument had become effective as a will, we need not discuss.

The possibility of holding the account and other property of Mrs. Dye in trust would have arisen only if, at the time Exhibit A became effective, Dean Dye had not then fully performed his obligation to educate Eleanor and John, and it could only have been so held pending compliance with his obligation.

Upon the most favorable view of the creation of a trust, the first question to determine is whether or not Dean Dye complied with his assurance to Mrs. Dye that he would see that Eleanor and John were educated. Whether Dean Dye educated Eleanor by reason of any understanding with his wife does not appear except by circumstances However, it is undisputed that he did educate her, not only at the Columbus School for Girls. but during her full course and up to graduation at Ohio State, and until her death. On the question of the education of John the record is silent and we may not conclude that Dean Dye did not perform any obligation which he had in that respect. The failure on the part of Dean Dye to observe these conditions was required to be established by the plaintiff. It does not appear. It is certain that he did not resort to any of the res in the so-called trust to educate either of the Thomas children

We have given full consideration to Plaintiff's Exhibit A, independent of its testamentary character, as an expression of purpose or declaration of Mrs. Dye as it might tend to establish a living trust and find it entirely inoperative to that effect.

What is the oral testimony purposed to establish the trust?

Delma Foulk, a very dear friend of Mrs. Dye, testified as taken from

the record of the first hearing, that preliminary to a proposed trip of Eleanor to California,

"Well, she (Mrs. Dye) told me that she had some money. I think she said she inherited it from some of her brothers and that she intended that for the education and she set it aside for them. She didn't tell them where or anything else."

And further the same witness,

"Yes, Mrs. Dye and I were talking one day, several times for that matter, and she told me that she had put money aside for the education of Eleanor and John Thomas. Now she didn't tell me where she had it, but she told me that she had arranged with Mr. Dye for the education of the children and that she felt safer on that account."

These are statements of a past transaction but do have the effect of identifying the savings account as the fund to which reference was made. The writing, Plaintiff's Exhibit A, is confirmatory of the manner and condition upon which Mrs. Dye eventually set the fund aside.

Later, this same witness testified to a conversation probably in 1929, five years after the death of Mrs. Dye, in the presence of Mrs. Morrow and possibly Dean Dye. "She (meaning Mrs. Foulk) said, 'Why, 1 was going abroad and I thought I would like Mrs. Morrow to go with me.' She said, 'I can't go, will you take Eleanor.' I said, 'Yes.' She said, 'Well, Mr. Dye would probably send Eleanor as a part of her education.' She hadn't used the education fund, and they talked together and later called me in to say that they had decided to do it." Later the witness said that Dean Dye had told her to go ahead and complete the arrangements to take Eleanor on the trip to Europe, and pursuant to that, he gave her a check for a deposit for the trip.

It should be noted, that there is no showing that Dean Dye, Eleanor, nor any other person used any of the money from the savings account in the name of Mrs. Dye. The check which was given for Eleanor's trip to Europe evidently was Mr. Dye's personal check. All of which is corroborative that he personally, independent of any trust fund, was assuming the obligation of educating Eleanor.

There is some question, on the record, whether Dean Dye was present during the conversation heretofore stated to have taken place in his presence. But it is urged that what Mrs. Morrow said about the education fund was binding upon Dean Dye because she was his agent. There is no showing that would justify the conclusion that Mrs. Morrow had any authority to bind Dean Dye by any statement which she made. She was related to him, and was his housekeeper but this is entirely inadequate to show the relationship of principal and agent. Much of the testimony is directed to the close relationship which at all times existed between Dean Dye, Mrs. Dye and the Thomas family and particularly, Eleanor, and the fact that Dean Dye was educating Eleanor and assisting her in other ways which occurred not only before but after the death of Mrs. Dye. As we view this testimony, it is probative only of the fact that the trust never came into existence upon the most favorable view of the evidence and the written instrument.

We recognize that it would be desirable, if it could be accomplished, that Mrs. Dye's estate pass to those who were related to her rather than to a stranger to her blood. However, we cannot set aside the principles

which control the creation of a trust in order to accomplish what might be a laudable purpose.

Giving full credence to all of the evidence, written and oral, it fails to establish a trust in several essentials.

There was no declaration of Mrs. Dye in praesenti in clear and unmistakable terms of an intention to become trustee for the benefit of Eleanor and John and to stand in that fiduciary relationship to them, or that Dean Dye should succeed her as trustee. **Ulmer v. Fulton, Supt., 129 Oh St 340;** 65 C. J. S. 231.

There were no acts in furtherance of a declaration of trust. The account at all times was in the name of Mrs. Dye without any change indicating an equitable interest of beneficiaries therein. Lamkin v. Robinson, supra  In **Jones v. Luplow, 13 Oh Ap 428,** where the claim of a trust was sustained, it appeared that on the day that the account, the subject of the trust, was opened, the settlor declared her purpose to deposit the money for the benefit of cestuis que trust and the account was carried in the name of "Meria Luplow in trust for Richard and Maria," the beneficiaries.

The testamentary instrument in terms is inconsistent with the theory that Mrs. Dye intended to relinquish her full right to control both legal and equitable interests in the savings account prior to her death.

The declaratory judgment in this court will be in conformity to this opinion.

In probability, the fact that there had been no administration of Mrs. Dye's estate will require that the savings account and any other personal effects which should be administered in her estate should be turned over to her administrator and eventually distribution worked out by and through that administration.

Judgment accordingly.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.