## No. C-783

**The Exchange National Bank of Colorado Springs, Colorado, a national banking association v. Charles Sparkman**

(554 P.2d 1090)

Decided September 13, 1976. Opinion modified and as modified rehearing denied October 12, 1976.

Spurgeon, Aman & Hanes, Gregory R. Piche, for petitioner.

Cleveland and Wengler, Edward D. Cleveland, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Sarah A. Sparkman died intestate in 1972. An heir, Charles Sparkman, commenced an action to have an inter vivos or revocable living trust declared invalid. The validity of the trust was upheld in the trial court. In a series of modified opinions, the court of appeals ultimately held that the trust was invalid because the transfer of certain securities did not comply with the Uniform Stock Transfer Act, C.R.S. 1963, 31-11-1,[1] and because of lack of proof of the proper transfer of certain bonds. It further held that these findings deprived the trust of a corpus and, therefore, invalidated the trust. *Sparkman v. Exchange National Bank*, 36 Colo. App. 287, 541 P.2d 111 (1975). We granted certiorari and now reverse the Colorado Court of Appeals and remand with directions to affirm the trial court.

On January 7, 1955, Sarah A. Sparkman (hereinafter the settlor) and the Exchange National Bank (hereinafter the bank) executed a document entitled "Trust Agreement." Pursuant to the terms of the document, the settlor delivered several unendorsed stocks and bonds to the bank. The settlor also signed and submitted separate stock assignment forms in which the spaces for the names of the transferor and transferee, the number of shares, the names of the issuing corporation, and the stock certificate numbers were left blank.

The agreement recited that "the Settlor has assigned, transferred and/or delivered to the Trustee the property described in Schedule A." Schedule A listed the stocks and bonds in question. Sarah Sparkman, the settlor, was to be the sole beneficiary of the trust during her lifetime. The agreement further provided that the "Trustee shall keep securities and property registered in the name of the Settlor." The trustee was given the power to manage and reinvest the proceeds from the property, subject to the approval of the settlor, the power to collect dividends and deposit them to the settlor's account in the bank, and the power to pay principal to the settlor when the settlor deemed it necessary. The settlor reserved the right to modify or revoke the agreement. Upon the death of the settlor, the trust was to terminate, and the trustee was to distribute the remaining assets of the trust to certain named parties.

In 1964, the bank re-registered the securities in its own name as trustee for Sarah Sparkman. It accomplished this by forwarding the securities, along with the stock assignment forms which it filled in, to various transfer agents.

### Validity of the Trust Agreement

The principal issue at trial was whether the "trust" agreement was illusory and invalid as an attempted testamentary disposition. It is well established that the settlor may reserve extensive powers of control

---

[1]Formerly C.R.S. 1953, 31-9-1, *repealed*, Colo. Sess. Laws 1965, ch. 330, § 155-10-102 at 1477 (effective July 1, 1966).

over the administration of the trust corpus. *See Denver National Bank v. Von Brecht*, 137 Colo. 88, 322 P.2d 667 (1958); *Estate of Brenner*, 37 Colo. App. 271, 547 P.2d 938 (1976); *Hageman v. First National Bank*, 32 Colo. App. 406, 514 P.2d 328 (1973); Note, 30 Rocky Mt. L. Rev. 517 (1958). *See generally*, Huff, *An Aspect of Estate Planning in Colorado: The Revocable Inter Vivos Trust*, 43 D.U.L.J. 296 (1966); Meyer, *The Revocable Trust as a Will Substitute – A Coming of Age*, 39 U. Colo. L. Rev. 180 (1966). Only when the trust is completely illusory, such as when the putative settlor "reserves possession and control in all particulars," will it be deemed invalid. *Compare Dunham v. Armitage*, 97 Colo. 216, 48 P.2d 797 (1935), with *Denver National Bank v. Von Brecht, supra*, and *Hageman v. First National Bank, supra. See also Dessar v. Bank of America National Trust and Savings Association*, 353 F.2d 468 (9th Cir. 1965). In the instant case, the settlor's retention of the power to revoke or modify the trust agreement and to exercise a veto over substantial investments by the trustee did not eliminate the substantial duties of the trustee with respect to the trust corpus. *See Thomas v. Dye*, 117 N.E.2d 515 (Ct. Com.Pl. 1953),[2] *rev'd on other grounds,* 127 N.E.2d 228 (Ohio App. 1954); 1 *Scott, Trusts* § 57.2 (2d ed. 1956); *Restatement (Second) of Trusts* § 57 (1957); *Huff, supra*.

A more delicate question is presented by the trust provision that the trustee shall keep securities and property "registered" in the settlor's name. A basic axiom of trust law is that "[i]n order to create a trust of any description, the [settlor] must indicate with reasonable definiteness an intention to sever the legal from the equitable estate." *Walton v. Wormington*, 89 Colo. 355, 2 P.2d 1088 (1931). In *Hageman v. First National Bank, supra*, a trust in shares of stock, which had been endorsed in blank and which had not been transferred upon the issuer's books, was upheld because there was effective transfer of title "as between the parties." We find the same reasoning applicable in this case: the settlor transferred possession of the securities, accompanied with endorsement assignment forms, and with a recitation sufficient to establish a present and unequivocal intent to vest the trustee with title. Under these circumstances, the registration provision of the agreement did not constitute a fatal defect in the creation of the trust corpus which was comprised of the securities in issue. *See Smith v. The James Irvine Foundation,*

---

[2] In *Thomas, supra*, the court noted:
"By weight of authority, a trust otherwise effective, is not rendered nugatory because the settlor reserves to himself the following rights and powers: (1) the use of the property and income therefrom for life; (2) the supervision and direction of investments and reinvestments; (3) the amendment or modification of the trust agreement; (4) the revocation of the trust in whole or part; (5) the consumption of principal."

277 F.Supp. 774 (C.D. Calif. 1967); *Davis v. Rossi*, 34 S.W.2d 8 (Mo. 1930).

### Burden of Proof

The court of appeals held that the "record does not support the trial court's finding that the legal title of the bonds was transferred." *Sparkman v. Exchange National Bank*, 36 Colo. App. 287, 541 P.2d 111 (1975). The court of appeals apparently concluded that the defendant failed to sustain its burden of proof as to the transfer of title to the bonds. We do not agree.

The burden of proof rested upon the plaintiff to prove the elements of his case, as determined by the pleadings, by a preponderance of the evidence. *See Judkins v. Carpenter*, 189 Colo. 95, 537 P.2d 737 (1975); section 13-25-127, C.R.S. 1973. The burden does not shift during the course of trial, although it may be aided by a presumption or a shift of the burden of *going forward* with the evidence once the plaintiff has established a prima facie case. *Judkins v. Carpenter, supra*. According to the pleadings in this case, the plaintiff sought to prove the trust invalid as an attempted testamentary disposition. As we have indicated, the record does not show that the plaintiff proved a prima facie case of the illusory character of the trust. The plaintiff failed to sustain his burden of proof in establishing that the trustee did not have defined duties and that the trustee never attained title to the corpus of the trust. The burden of going forward, therefore, did not shift, since the plaintiff failed to prove a prima facie case. We, therefore, affirm the trial court's finding that the bonds were within the corpus of the trust. *See Smith v. The James Irvine Foundation*, 277 F.Supp. 774 (C.D. Calif. 1967) (plaintiff-heir failed to prove non-delivery of trust indenture).

### Compliance With the Uniform Stock Transfer Act

The court of appeals correctly concluded that the settlor failed to comply with the provisions of the Uniform Stock Transfer Act, C.R.S. 1963, 31-11-1, *et seq. See Sparkman v. Exchange National Bank, supra*. The question which we must resolve is the legal effect of the failure to comply with transfer formalities on the trust relationship.

Technical concepts of title and title transfer have not been generally used as a basis for vitiating a trust and as a means of defeating the intent of the settlor. *See, e.g., In re Estate of Brenner*, 37 Colo. App. 271, 547 P.2d 938 (1976); *Hageman v. First National Bank*, 32 Colo. App. 406, 514 P.2d 328 (1973); *Smith v. The James Irvine Foundation, supra*; *Hausfelder v. Security-First National Bank*, 77 Cal.App.2d 478, 176 P.2d 84 (1946); *Home for Destitute Crippled Children v. Boomer*, 308 Ill. App. 170, 31 N.E.2d 812 (1941) (refusing to apply Uniform Stock Transfer Act); *Kintzinger v. Millin*, 254 Iowa 173, 117 N.W.2d 68 (1962) (same); *Johnson v. Johnson*, 300 Mass. 24, 13 N.E.2d 788 (1938).

■ The court of appeals recognized that the Uniform Stock Transfer Act provides a method whereby a person who was the intended transferee of an unendorsed stock certificate may compel specific performance of the duty to complete the endorsement. *Sparkman v. Exchange National Bank, supra*; C.R.S. 1963, 31-11-9. Moreover, the obligation may be enforced against the settlor's personal representative. *See Reinhard v. Sidney B. Roby Co.*, 110 Misc. 152, 179 N.Y.S. 781 (1920). The transfer of the stock would then fully comply with the statute.·

■ Necessary elements for the invocation of the remedial provision of the Uniform Stock Transfer Act are the owner's "intent to transfer such certificate or shares," and the "absence of an agreement to the contrary." C.R.S. 1963, 31-11-9. The evidence supported the trial court's determination that Sarah Sparkman, the settlor, had the requisite intent, and we will not disturb that finding on appeal. *See Estate of Granberry v. Baker*, 30 Colo. App. 590, 498 P.2d 960 (1972).

■ Respondent contends that the trust agreement provision regarding registration of the securities in the settlor's name was "an agreement to the contrary." We conclude that even if the registration provision would have initially barred invocation of the remedial section of the statute as an "agreement to the contrary," the registration provision of the trust agreement was subsequently modified. The settlor's initial grant·of the power to re-register the stocks, and her eight-year acquiescence in the use of such power by the trustee modified the registration provision of the original agreement. In 1964, the bank re-registered the stocks in its own name as trustee, using the blank assignment forms endorsed by the settlor. The parole evidence rule presents no barrier to a subsequent modification by conduct. *See Hatch v. Fritz*, 48 Colo. 530, 111 P. 74 (1910); *In re Estate of MacDonald*, 4 Ariz. App. 94, 417 P.2d 728 (1966). Nor does the Statute of Frauds bar a finding of subsequent modification where the trust relation was previously established by a written document signed by the settlor, and where the settlor signed assignments in blank to carry out the terms of the trust. *See* C.R.S. 1963, 59-1-18. As thus modified, the agreement does not.bar application of C.R.S. 1963, 31-11-9 against the personal representative of the settlor.

Accordingly, we reverse the decision of the court of appeals and remand with directions to affirm the judgment of the trial court.