**MILE HI CONCRETE, INC., Petitioner,**

v.

**Richard MATZ, Respondent.**

**No. 91SC333.**

Supreme Court of Colorado,
En Banc.

Nov. 23, 1992.

Watson, Nathan & Bremer, P.C., Mark H. Dumm, Ellis J. Mayer, Douglas A. Tabor, Denver, for petitioner.

Harding & Ogborn, P.C., Steven A. Shapiro, James M. Edwards, Denver, for respondent.

Montgomery, Green, Jarvis, Kolodny & Markusson, Karen L. Smith, Michael E. Oldham, Fogel, Keating and Wagner, P.C., William L. Keating, Steven R. Polidori, David Struthers, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Justice ERICKSON delivered the Opinion of the Court.

This is a negligence and products liability action. We granted certiorari to review the jury instructions given by the district court. The jury returned a verdict for the defendant, and the court of appeals reversed and ordered a new trial. *Matz v. Mile Hi Concrete, Inc.*, 819 P.2d 530 (Colo. App.1991). The jury instructions on the duty of care owed by the petitioner, Mile Hi Concrete, Inc. (Mile Hi), to the respondent, Richard Matz, and the statutory presumption created by section 13–21–403(3), 6A C.R.S. (1987), are the primary issues on appeal. We affirm in part, reverse in part, and return this case to the court of appeals with directions to remand to the district court for a new trial.

I

Matz was the owner of Perfection Carpet and worked as a carpet installer. He decided to extend and enlarge a concrete slab at his home to provide a place to park his boat. Matz did not have any prior experience working with wet concrete either in a professional or personal capacity, but concluded that he could build the forms and level the concrete.[1]

Matz chose to purchase concrete from Mile Hi based on information he obtained from an advertisement in the yellow pages of the telephone directory. The advertisement was focused on obtaining orders for ready-mixed concrete business from small contractors and homeowners.[2]

Matz ordered the concrete from Mile Hi on a Saturday morning. When Mile Hi delivered the concrete later that afternoon, Matz began to level it with a shovel. When Matz experienced difficulty keeping up with the flow of concrete being released from the truck, Mile Hi's driver showed Matz how to level the concrete more effectively with a two-by-four. The driver did not warn Matz of the dangers associated with working in wet concrete.[3]

---

1. Concrete is commonly understood to mean hardened concrete. However, concrete passes through several phases in its production; from the individual ingredients standing alone (cement, sand, gravel or crushed rock, and water); to a "wet" formulation; and finally, to its commonly known and understood hardened or set form.

   During the trial Matz testified that, in his business as carpet layer, "when we go in ... the concrete is done and the plumbing is done, the walls are up." Matz testified that he had never poured concrete or "done concrete sidewalk work."

2. The yellow pages advertisement stated:

   > 1 YARD TO ANY SIZE DELIVERED 7 DAYS A WEEK
   >
   > SPECIAL ATTENTION TO SMALL CONTRACTORS & HOMEOWNERS, ON–SITE–MIXED—THEREFORE ALWAYS FRESH CONCRETE
   > the right mix for your job ... any quantity—large or small—you only pay for what you use ... all deliveries are metered, delivered for your convenience ... weekend deliveries ...

   Ray Spykstra, the owner of Mile Hi, testified that Mile Hi targeted its advertising at smaller users of concrete, including homeowners, and that 80 to 90 percent of his customers were homeowners.

3. Nearly all concrete is composed of cement and other material, such as sand, rock, or gravel. When water is added to the mixture, calcium hydroxide (commonly known as lye) is produced, which is a highly caustic and corrosive

Because the mixtures used to create the concrete can vary significantly between individual batches and mixes, the dangers created by wet concrete necessarily differ.[4] Moreover, these dangers differ among concrete suppliers because each supplier retains exclusive control of how it formulates and prepares its own product.[5]

Before leaving Matz's home, Mile Hi's driver added more water to the concrete mixture in order to prevent the concrete from setting or hardening so that Matz would have additional time to level and work the wet concrete.

When the concrete was delivered, Matz paid the driver and was given a receipt. The receipt did not contain any warnings of the dangers of working with wet concrete even though Mile Hi used invoices containing such warnings for some of its customers and had received numerous warnings from its own cement suppliers.[6]

Matz, unaware of the potential dangers of working in wet concrete, suffered second-degree burns after working on his hands and knees in the wet concrete for twenty-five to forty-five minutes. It is undisputed that the burns were caused by Matz working in the wet concrete.

Matz sued Mile Hi to recover damages for his injuries and asserted two claims for relief. Matz's first claim was that Mile Hi negligently failed to warn him of a known risk. The second claim was based on strict liability for supplying concrete that was defective and unreasonably dangerous because of Mile Hi's failure to provide a warning.

The jury returned a verdict in favor of Mile Hi. On appeal, Matz claimed that the jury was improperly instructed on Mile Hi's duty to warn him about the dangers of working in wet concrete. Matz also assert-

---

compound. The dangers of wet concrete occur because of the exothermic chemical reaction that occurs when water is added to the mixture. Depending on the formulation chosen by the concrete mixer, wet concrete may harden as quickly as five minutes, or, as in this case, as slowly as forty-five minutes.

Burning and irritation of the skin occurs only when concrete is in the "wet" stage prior to the time when the concrete sets. Therefore, the potential for harm exists only for a short period of time and the burn characteristics of a particular batch of wet concrete can vary significantly.

4. The dangerous characteristics of each batch of wet concrete vary with the chemical reactions that occur when water is added to the cement and gravel or crushed rock used in the concrete mixture. *See* Sandor Popovics, *Fundamentals of Portland Cement Concrete: A Quantitative Approach* 15 (1982) (stating that an undesirable property of concrete is that its characteristics fluctuate more than the properties of metal or other generic products, and differ from batch to batch, or within a batch, even though there may be no apparent change in composition).

These variances depend solely upon the type of cement and the admixtures that are included when the concrete is mixed, and the amount of water which is added to the mixture which will lengthen the amount of time before the concrete sets. There is no standard combination of cement; water; and sand, gravel, or crushed rock that is used by firms or individuals that prepare concrete for sale. While Portland cement is the most common ingredient in concrete, many other types of cement are also used to produce a concrete product; the properties, strengths,

burn characteristics, and heat of hydration of which are substantially different. *See* 5 *Encyclopedia Britannica* 109–10 (1951) (listing various types of cements).

5. Ready-mix concrete suppliers use different techniques in delivering their product. Spykstra testified that the concrete sold by Mile Hi was different than that sold by their larger competitors because it was mixed at the job site rather than before. He testified that:

[Mile Hi's] concrete does not receive any water until we're on the job, so our concrete doesn't start to dehydrate until it's coming out our chute. If Denver Ready–Mix would send a truck out and it took an hour and a half to get to the job, that load might be rejected on certain jobs because it's already heated up. We had better concrete, in my estimation, because we had fresh concrete. When the homeowner got it, it was better product for him, because he wasn't as familiar with finishing concrete and it didn't set up as fast. In terms of temperature, it's not really very hot. If you got a hot load of concrete and it hit the ground, it would flash set. Our concrete was fresh, it was easy for the homeowner to work.

6. The warning listed on some of the invoices used by Mile Hi provided:

CAUTION: Freshly mixed cement, mortar, concrete, or grout may cause skin injury. Avoid contact with skin where possible and wash exposed skin areas promptly with water. If any cement mixtures get into eyes, rinse immediately and repeatedly with water and get prompt medical attention. KEEP OUT OF REACH OF CHILDREN.

ed that the district court erred in instructing the jury that Mile Hi was entitled to a presumption of non-defectiveness if the jury found that concrete was sold for the first time for use or consumption ten or more years before Matz was injured.

The court of appeals reversed and ordered a new trial because (1) the jury was not instructed that Mile Hi had a duty to warn Matz of the dangers of wet concrete, and (2) the district court erred in instructing the jury that a product that had been sold for use or consumption for ten or more years prior to the injury was presumed to be not defective and all warnings were proper and adequate.

## II

■ Mile Hi contends that the court of appeals erred in concluding that the instructions on negligent failure to warn were insufficient. Mile Hi asserts that the district court properly instructed the jury on the duty to use reasonable care in warning of possible dangers associated with the use of concrete and that the instructions properly left for jury determination the factual question of whether Mile Hi had breached that duty.[7]

The jury instructions given by the district court in this case set forth a duty of reasonable care. Based on the instruc-

tions, Mile Hi would be liable to Matz if the jury found that the dangers of working in concrete were not obvious to the ordinary user and Mile Hi breached the duty of reasonable care by failing to warn Matz of the dangers associated with concrete. In determining whether the duty of reasonable care was breached, the instructions allowed the jury to consider whether the injuries incurred were foreseeable. The instructions also advised the jury that Mile Hi was required to warn Matz of the dangers of wet concrete if Mile Hi knew or should have known that its product could cause injury, unless the jury determined that the dangers were obvious to the final user of the product.

In their entirety, the instructions properly informed the jury that Mile Hi owed to Matz the obligation to exercise reasonable care in marketing, selling, and labeling its product. The instructions informed the jury that Mile Hi was negligent if its failure to warn Matz constituted a failure to exercise reasonable care and that Mile Hi was liable to Matz for damages if Mile Hi's negligence caused his injuries.

■ A trial court should determine, as a matter of law, the existence and scope of the duty to which a defendant is to be held. *Metropolitan Gas Repair Serv., Inc. v.*

---

7. The relevant jury instructions are:

Instruction number 17:
In order for the Plaintiff, Richard Matz, to recover from the Defendant, Mile Hi Concrete, Inc., on his claim of negligence, you must find all of the following have been proved by a preponderance of the evidence:
. . . .
2. The Defendant was negligent in manufacturing the concrete in that it failed to exercise reasonable care to prevent the concrete from creating an unreasonable risk of harm to one who might reasonably be expected to use, consume or be affected by the concrete, while it was being used in the manner that Defendant might reasonably have expected;
3. The Plaintiff was one of those persons the Defendant should reasonably have expected to use, consume or be affected by the concrete; and
4. The Plaintiff incurred injuries, damages and losses, which were caused by the Defendant's negligence, while the concrete was being used in a manner the Defendant should reasonably have expected.

Instruction number 19:
The negligence, if any, of the Defendant, is not a cause of any damages and/or losses to the Plaintiff, Richard Matz, unless damage or loss to a person in the Plaintiff's situation was a reasonably foreseeable consequence of that negligence. The exact or precise damage or loss need not have been foreseeable, but it is sufficient if a reasonably careful person, under the same or similar circumstances, would have anticipated that damage or loss to a person in the Plaintiff's situation might result from the Defendant's conduct.
Instruction number 20:
If a seller of a product knows or in the exercise of reasonable care should know that the use of the product may be harmful or injurious and such danger would not be obvious to the final user, then the seller is obligated to use reasonable care to warn the user of the danger, and he is negligent if he fails to do so. This duty to give warning is discharged if he labels his product in a manner which would reasonably inform the user of the danger.

*Kulik,* 621 P.2d 313 (Colo.1980). Matz claims that the court of appeals correctly held that the jury instructions failed to specifically define the precise nature and scope of Mile Hi's duty. In determining what duty is owed to an injured party, a court must consider several factors. These factors include the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden placed on the defendant to guard against injury, and the consequences of placing that burden on the defendant. *University of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987). When a manufacturer or seller knows or should know of unreasonable dangers associated with the use of its product and the dangers are not obvious to product users, a manufacturer has an obligation to warn of the dangers and a breach of that obligation constitutes negligence. *Palmer v. A.H. Robins Co.,* 684 P.2d 187, 198 (Colo.1984).

▮ Whether there was a breach of the duty to exercise reasonable care is the key issue in a negligence case. What constitutes reasonable care necessarily varies and depends upon the degree of risk associated with a particular activity. *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 587 (Colo.1984). A court may instruct the jury on a higher standard of care if all minds concur that the activity is one of high risk or danger. *Denver Consol. Elec. Co. v. Simpson,* 21 Colo. 371, 377, 41 P. 499, 501 (1895).[8] However, where the facts lead equally intelligent persons to different views of the degree of care required, a court should not lay down a rule prescribing any specific degree of care. *Id.* Therefore, if the facts lead to differing views as to the degree of risk associated

with working with Mile Hi's concrete, then instructing the jury on the reasonable care standard was appropriate and instructions regarding a higher standard were neither required nor permissible. In our view, there are disputed facts on the amount of risk involved in working with Mile Hi's concrete. We therefore conclude that the district court correctly instructed the jury on the reasonable care standard.

A factual dispute existed as to whether Mile Hi could foresee that a reasonable person in Matz's position would work in wet concrete for forty-five minutes or whether those dangers were obvious to a reasonable user of pre-mixed concrete. It may have been foreseeable that a person who was unaware of the dangers of contact with wet concrete would work in the concrete and be injured. However, the evidence is in conflict as to whether Matz's conduct was foreseeable or whether the dangers were obvious to a reasonable person working with wet concrete. The disputed factual issue was properly left for the jury to determine. Similarly, whether or not it is reasonable to market and sell concrete to homeowners without warning of the dangers inherent in wet concrete is also a factual determination to be resolved by the jury. It was also disputed as to whether it was customary in the concrete industry to provide warnings. Mile Hi used a sales invoice containing a warning, but did not give all users, including Matz, an invoice containing the warning.

Based on the evidence, reasonable minds could differ as to the degree of risk associated with the marketing and sale of concrete to an individual such as Matz. Because of the evidentiary conflict, the district court's instruction on the duty owed

---

**8.** Mile Hi contends that the court of appeals misapplied *Imperial Distribution Services, Inc. v. Forrest,* 741 P.2d 1251 (Colo.1987), to raise the standard of care in this negligence case. The court of appeals did not misapply *Imperial* because it merely cited the case for the general proposition that "the existence and scope of duty are matters of law for the court to determine." *Matz,* 819 P.2d at 531.

However, use of *Imperial* in an ordinary negligence case is misleading. *Imperial* is controlling, and therefore applicable, only in cases

where there is an allegation that the product or activity involved is inherently dangerous or ultrahazardous. *Imperial* stands only for the proposition that when a claim is made that a product or activity is inherently dangerous or ultrahazardous, it is for the court to determine whether or not to submit an instruction to the jury that the defendant owed the plaintiff an increased duty of care. Because Matz has not alleged that concrete is an ultrahazardous product, nor could he, the court of appeals should not have cited language from *Imperial.*

by Mile Hi to Matz properly left the factual determination of whether that duty encompassed an obligation to warn for the jury.[9] Accordingly, we reverse the judgment of the court of appeals on this issue.

### III

■ Mile Hi asserts that the district court erroneously instructed the jury on the statutory presumption created by section 13–21–403(3).[10] The jury was instructed that:

"Presumptions" are rules based on experience or public policy and are established in the law to assist the jury in ascertaining the truth.

In this case, if you find that cement was sold for the first time for use or consumption ten or more years before any claimed injuries were incurred by the plaintiff, then the law presumes that concrete was not defective and all warnings and instructions were proper and adequate.

You must consider this presumption together with all the other evidence in the case in determining whether or not the concrete was defective and all warnings and instructions were proper and adequate.

The district court erred in giving the presumption instruction. In this case there was no reason for the trial judge to instruct the jury on the statutory presumption contained in section 13–21–403(3). Because the giving of an erroneous instruction constitutes reversible error once prejudice is shown, the court of appeals properly held that the district court's decision should be reversed. *Hise v. Romeo Stores Co.*, 70 Colo. 249, 253, 199 P. 483, 485 (1921).

■ Section 13–21–403(3) is not a statute of limitations or repose that insulates a defendant from liability if the product was sold use or consumption more than ten years prior to the injury.[11] Section 13–21–403(3) creates only a *rebuttable presumption* that will prevail in the absence of evidence to the contrary. *Sexton v. Bell Helmets, Inc.*, 926 F.2d 331 (4th Cir.1991), in construing a similar statute, held that

9. The jury instruction proposed by Matz removes from jury determination the issues of whether the danger was obvious to the reasonable user or whether the injuries were foreseeable to the manufacturer by instructing the jury that "[a] manufacturer of concrete *has a duty to warn* the user of that concrete of the danger that continued exposure of the wet concrete to wet clothing or directly to the skin could cause burns or injuries." (Emphasis added.)

10. Section 13–21–403(3) provides that:
ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.

11. Moreover, section 13–21–403(3) is not a statute of repose that employs a presumption. Kansas has adopted a ten-year statute of repose for product liability actions that employs a presumption. Section 60–3303 of the Kansas statutes provides that:
[A] product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired.
. . . .
In claims that involve harm caused more than ten years after time of delivery, a presump-

tion arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.
Kan.Stat.Ann. § 60–3303 (1983 & 1991 Supp.); *see also* Model Uniform Products Liability Act § 110(B), 44 Fed.Reg. 62714 (October 31, 1979).
The Kansas statute illustrates the proper use of a presumption to shift the burden of going forward with evidence to the plaintiff. Under the Kansas statute, a defendant must show that the harm was caused after the "useful safe life" expired in order to bar a product liability claim. One way for a defendant to satisfy this burden is by showing that the harm was caused more than ten years after the time of delivery. Once a defendant has shown that the product has existed for the statutory period, this "presumption imposes upon [a plaintiff] the burden of going forward with evidence to rebut or meet the presumption" by showing that the "useful safe life" has not expired. *See* CRE 301. To rebut the presumption, a plaintiff may show that the "useful safe life" of the product at issue exceeded ten years. However, a showing by a plaintiff merely that the product *was defective* will not rebut the presumption.
If section 13–21–403(3) was intended to create a statute of repose or a statute of repose that employs a presumption, the General Assembly should amend or modify the statute accordingly.

there is no need for an instruction based on such a presumption.[12]

■ To establish liability, a plaintiff must prove each element of a claim for relief by a preponderance of the evidence. *See Exchange Nat'l Bank v. Sparkman,* 191 Colo. 534, 538, 554 P.2d 1090, 1092 (1976). A plaintiff has the burden of persuasion as to the defective condition of a product. Regardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 96, at 683, § 103, at 713 (5th ed. 1984); Restatement (Second) of Torts § 402A.

The rules of evidence in Colorado provide that a presumption does not shift the burden of persuasion. CRE 301 provides:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes upon the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

CRE 301; *see also City and County of Denver v. DeLong,* 190 Colo. 219, 223, 545 P.2d 154, 157 (Colo.1976) (holding that presumption does not eliminate the need to establish a prima facie case); *American Ins. Co. v. Naylor,* 101 Colo. 34, 40, 70 P.2d 349, 352 (1937) (holding that rebuttable presumptions do not shift the burden of persuasion). It is precisely because the plaintiff (the party against whom the presumption is directed) already has the burden of going forward with evidence in this case that an instruction based on the statutory presumption of section 13–21–403(3) is meaningless.[13]

■ If a plaintiff fails to present sufficient evidence that a product is defective, he cannot satisfy the burden of persuasion or establish a prima facie case and a court will direct a verdict for the defendant. On the other hand, a plaintiff who has presented sufficient evidence to defeat a motion for a directed verdict has necessarily rebutted the presumption of section 13–21–403(3).[14] Therefore, no reason exists for a trial judge to instruct a jury on the statutory presumption of section 13–21–403(3). *See Sexton v. Bell Helmets, Inc.,* 926 F.2d 331 (4th Cir.1991) (holding that district court did not err in failing to instruct jury

**12.** Although section 13–21–403(3) is a unique statute, Kentucky has adopted a similar approach and is the only other state that has enacted a statutory presumption that a product is not defective based on the passage of time. Section 411.310 of the Kentucky statutes provides:

> (1) In any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture.
> (2) In any product liability action, it shall be presumed, until rebutted by a preponderance of evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured.

Ky.Rev.Stat.Ann. § 411.310 (Michie 1992).

We share the view of the Fourth Circuit that an instruction based on such a statutory pre-

sumption is meaningless. *See Sexton v. Bell Helmets, Inc.,* 926 F.2d 331 (4th Cir.1991) (holding that district court did not err in failing to instruct jury based on section 411.310(1)).

**13.** For an example of how a presumption in favor of the defendant can shift the burden of going forward to the plaintiff see *supra* note 11 (discussing Kansas statute of repose).

**14.** A motion for directed verdict should not be granted unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained. *Smith v. Denver,* 726 P.2d 1125, 1128 (Colo.1986); C.R.C.P. 50(a). If a trial judge concludes that a reasonable jury could return a verdict in the plaintiff's favor, a defendant's directed verdict motion cannot be granted. In order to reach this conclusion, a trial judge must necessarily first determine that the plaintiff has presented evidence sufficient to establish a prima facie case.

based on similar statutory presumption).[15]

In this case, the district court denied Mile Hi's motion for a directed verdict. By presenting sufficient evidence to overcome the motion for directed verdict, Matz necessarily rebutted the statutory presumption of section 13–21–403(3) that the concrete was not defective. Because Matz retained the burden of persuasion, a jury could have properly found for either party on the disputed issues.[16]

The district court erred in giving Mile Hi's tendered instruction, even though there was evidence in the record that concrete had been sold for use or consumption for ten years prior to the injury, because Matz rebutted the statutory presumption of section 13–21–403(3). *See DeLong*, 190 Colo. at 223, 545 P.2d at 157 (holding that trial court should not give instruction concerning presumption when direct and credible evidence supports a contrary conclu-

sion); *Schenk v. Minolta Office Sys., Inc.,* 802 P.2d 1131, 1133 (Colo.App.1990) (same).

■■■ The district court committed reversible error in giving an improper instruction on the statutory presumption contained in section 13–21–403(3). *See Cooper v. Newmyer,* 80 Colo. 246, 248, 250 P. 559, 559 (1926) (stating that judgment based on improperly given instructions should be set aside); *Hise v. Romeo Stores Co.,* 70 Colo. 249, 253, 199 P. 483, 485 (1921) (reversing judgment based on improperly given instruction); *Walsh v. Jackson,* 33 Colo. 454, 456–57, 81 P. 258, 258–59 (1905) (reversing judgment based on erroneous instruction). It is prejudicial error to give an erroneous instruction because the appellate court has no way of knowing to what extent the jury was misled. *Hise,* 70 Colo. at 253, 199 P. at 485.

■■■ The presumption of section 13–21–403(3) is not evidence.[17] An instruction

---

**15.** One commentator has suggested that:

[t]he theory is simple to state, and if religiously followed, not at all difficult to apply. The trial judge need only determine that the evidence introduced in rebuttal is sufficient to support a finding contrary to the presumed fact. If that determination is made, certainly there is no need to instruct the jury with regard to the presumption.

2 *McCormick on Evidence* § 344, at 462 (John William Strong ed., 4th ed. 1992) (emphasis added). Judge Hand further noted that "if the trial is properly conducted, the presumption should not be mentioned at all." *Alpine Forwarding Co. v. Pennsylvania R. Co.,* 60 F.2d 734, 736 (2d Cir.), *cert. denied,* 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559 (1932).

**16.** We do not hold that a defendant cannot introduce evidence that a product has been in use for more than ten years as evidence of nondefectiveness. Rather, the presumption itself can not rise to the level of evidence. *See* 2 *McCormick* § 344, at 464 (a jury question is presented not because of the presumption, but because of the natural inference flowing from the evidence); 9 *Wigmore on Evidence* § 2487, at 296 n. 7 (Chadbourn rev. 1981) (after the presumption is rebutted, the facts that previously gave rise to it operate with such natural probative force as they may have).

**17.** One treatise explains the effect of presumptions as follows:

[T]he peculiar effect of a presumption "of law" ... is merely to invoke a rule of law compelling the jury to reach the conclusion in

the absence of evidence to the contrary from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law and the case is in the jury's hand free from any rule.

9 *Wigmore* § 2491, at 305.

For further criticism of the rule that presumptions are evidence see 2 *McCormick* § 344, at 467–68 (instructing the jury that the presumption is evidence means little to the jury and runs counter to accepted theories of the nature of evidence); Alfred L. Gausewitz, *Presumptions in a One-Rule World,* 5 Vand.L.Rev. 324, 333–34 (1952); J.P. McBaine, *Presumption; Are They Evidence?,* 26 Cal.L.Rev. 519, 333–34 (1938). *See also* Annotation, *Comment Note.—Effect of Presumption as Evidence or Upon Burden of Proof, Where Controverting Evidence is Introduced,* 5 A.L.R.3d 19 (1966) (cataloguing cases holding that presumptions are not evidence, but also listing cases holding that presumptions are evidence).

In *Belle Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118, 126 n. 14 (Colo.1983), we stated in a footnote that the presumption of section 13–21–403(1)(a) "acts as rebuttable evidence of the non-defectiveness of any product which may be the subject of a products liability action." We expressly noted in *Belle Bonfils,* however, that section 13–21–403(1)(a) was not at issue in the case before the court.

In our view, later courts have erred to the extent that they have used *Belle Bonfils* to suggest that the presumptions of section 13–21–403 are evidence. *See, e.g., Hawkinson v. A.H. Rob-*

based on the statutory presumption of section 13–21–403(3) should not be given when there is evidence to the contrary. The only effect of the statutory presumption of section 13–21–403(3) is to impose the burden of going forward on the party against whom it is directed. *See* CRE 301.[18]

Accordingly, the court of appeals properly found that the giving of an instruction based on section 13–21–403(3) constituted reversible error.

## IV

The district court properly instructed the jury on the duty of care Mile Hi owed Matz. However, the district court committed reversible error by instructing the jury on the statutory presumption of section 13–21–403(3). Accordingly, we affirm the judgment of the court of appeals in part, reverse in part, and return this case to the court of appeals with directions to remand for a new trial consistent with this opinion.

ROVIRA, C.J., concurs in part and dissents in part, and VOLLACK, J., joins in the concurrence and dissent.

QUINN, J., does not participate.

Chief Justice ROVIRA concurring in part and dissenting in part:

I concur with the majority's holding that the jury was properly instructed on the duty of care owed to Matz by Mile Hi Concrete. I respectfully dissent from Part III of the majority opinion.

In finding the statutory presumption of section 13–21–403(3), 6A C.R.S. (1987), wholly ineffective, the majority makes the central determination that this presumption is not evidence. Maj. op. at 206. Though I

acknowledge that the question of a presumption's status, *i.e.*, as that which is or is not evidence, is a close one—with ample authority supporting either position—I would find that the statutory presumption at issue in this case does constitute evidence.

So finding would enable this court to give some effect to the legislature's action in passing this statute, *see In re United States Dist. Court for Dist. of Colo.*, 179 Colo. 270, 274–75, 499 P.2d 1169, 1171 (1972) ("a statute should be given the construction which will render it effective in accomplishing the purpose for which it was enacted"); *Colorado General Assembly v. Lamm*, 700 P.2d 508, 517 (Colo.1985) ("When possible, every word of a statute must be given effect."), and thereby avoid a finding that the legislature passed a law which is utterly meaningless and ineffective, *see Colorado State Civil Service Emp. Ass'n v. Love*, 167 Colo. 436, 450, 448 P.2d 624, 630 (1968) ("Each clause and sentence of either a constitution or statute must be presumed to have purpose and use, which neither the courts nor the legislature may ignore."); *McMillin v. State*, 158 Colo. 183, 188, 405 P.2d 672, 674 (1965) (quoting 50 Am.Jur. *Statutes* §§ 400, 402 (1944)) ("In the interpretation of a statute, the legislature will be presumed to have inserted every part thereof for a purpose, and to have intended that every part of a statute should be carried into effect."); *New York Indem. Co. v. Industrial Comm'n of Colo.*, 86 Colo. 364, 367, 281 P. 740, 741 (1929) ("[Supreme Court] assumes a useless legislative enactment only when obliged to do so.")) In my opinion, this court should not declare laws passed by the legislature to be superfluous when clear

*ins Co.*, 595 F.Supp. 1290, 1311 (D.Colo.1984) (suggesting that the presumptions established by section 13–21–403 are considered to be evidence of non-defectiveness based on *Belle Bonfils*); *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 83 (Colo.App.1986) (finding that the rebuttable presumption of section 13–21–403(1)(a) is to be considered as evidence based on *Belle Bonfils*); *see also Tafoya v. Sears Roebuck & Co.*, 884 F.2d 1330, 1336 (10th Cir.1989) (quoting *Union Ins. Co.*).

**18.** CRE 301 is based on Federal Rule of Evidence 301. McCormick has noted that "it seems highly unlikely that an instruction to the jury referring to a presumption as evidence would be proper under the Federal Rule" because during congressional consideration of the Federal Rules, a version that treated presumptions as evidence was rejected as "ill-advised." 2 *McCormick* § 344, at 467 n. 34.

legal precedent exists which could be relied on to render such laws meaningful.

Finding that the statutory presumption contained in section 13–21–403(3), 6A C.R.S. (1987), has some effect would enable this court to address the question on which certiorari was granted in this case:

> Whether the court of appeals erred in concluding that the jury could not consider that concrete that had been in use for more than ten years for the purpose of a rebuttable presumption that warnings were adequate and the manufacturer or seller was not negligent, when Matz' own expert testified that the same product had been in construction use since the time of the Roman Empire.

I would find that the court of appeals erred in reversing the district court since sufficient evidence was presented at trial to instruct the jury on the ten-year presumption. I would base this finding on my understanding that the ten-year statutory period begins to run from the time at which an identifiable product line was first sold for use or consumption by the manufacturer (*i.e.*, concrete), *see Patterson v. Magna Am. Corp.*, 754 P.2d 1385 (Colo.App.1988), and not the time at which the particular product causing injury was first sold (*i.e.*, the specific batch of concrete delivered to Matz), *see Downing v. Overhead Door Corp.*, 707 P.2d 1027 (Colo.App.1985).

Therefore, I respectfully dissent from Part III.

I am authorized to say that Justice VOLLACK joins in this concurrence and dissent.