Chad A. **WAGNER;** State Compensation Insurance Fund, Plaintiffs–Appellants,

v.

**CASE CORPORATION,** formerly known as J.I. Case Company; J.I. Case Company, also known as J.I. Case Threshing Machine Company, Defendants–Appellees.

Nos. 93–1194, 93–1491.

United States Court of Appeals, Tenth Circuit.

Aug. 31, 1994.

Roger T. Castle, Denver, CO, for plaintiff-appellant Chad A. Wagner.

Robert W. Klingler, Denver, CO, for plaintiff-appellant Colorado Compensation Ins. Authority.

Colin C. Campbell of Wood, Ris & Hames, P.C., Denver, CO, for defendants-appellees.

Before LOGAN and BARRETT, Circuit Judges, and RUSSELL,* District Judge.

DAVID L. RUSSELL, District Judge.

Plaintiffs Chad A. Wagner and Colorado Compensation Insurance Authority appeal from a judgment based on a jury verdict in favor of defendant Case Corporation in this products liability action. Plaintiffs contend that the district court erred in several ways by excluding evidence and giving incorrect jury instructions. We conclude that in light of a recent change in Colorado law regarding the use of presumptions in products liability cases, the district court did give an erroneous jury instruction. Because we cannot know the extent to which the jury was misled by the erroneous instruction, we reverse and remand for a new trial.[1]

I

For purposes of this appeal, we need only describe the facts and claims generally. Wagner was injured by a Model 580 Super E loader/backhoe, a piece of heavy equipment manufactured by Case that had a loader on the front and a backhoe on the back. At the time, Wagner was working for a construction company as a spotter on a trench digging operation at an oil refinery. Another employee was operating the backhoe part of the machine to dig the trench, and Wagner was watching to make sure the backhoe did not hit an underground gas pipe. After the trench was dug, the operator swiveled his

---

* Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

seat in the machine's cab so he could face the front and drive the machine forward. As he did so, he inadvertently bumped a lever controlling the boom to which the backhoe was attached. The boom swung around and struck Wagner's arm, pinning it against a steel beam and injuring his arm and wrist.

Wagner and Colorado Compensation Insurance Authority, who paid Wagner worker's compensation benefits for his injuries, brought this diversity action against Case, alleging that Case was liable for the injuries because it defectively designed the machine and failed to provide adequate warnings regarding the dangers of its use. The primary design defect alleged was Case's failure to install a lockout mechanism to prevent the inadvertent activation of the backhoe. Such a device would have made the backhoe inoperable unless the operator were facing the rear of the machine intending to use the backhoe. Case denied that the machine was defectively designed or that it provided inadequate warnings. It contended that a lockout mechanism was impractical, and that Wagner's injuries were caused by his own, as well as the operator's and their employer's, negligence.

The case was tried to a jury on the theory of strict products liability for defective design and failure to warn. The jury found that the loader/backhoe was not defective, and the district court entered judgment accordingly. Plaintiffs timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Plaintiffs contend that the district court erred by (1) excluding evidence of similar accidents and activation problems; (2) including an "open and obvious" defense in the failure-to-warn jury instruction; (3) instructing the jury regarding a "state of the art" presumption; (4) admitting evidence of the outcome of litigation involving another accident; and (5) denying plaintiffs' Fed.R.Civ.P. 60(b) motion for new trial based on newly discovered evidence. Because the state-of-the-art presumption is determinative of this appeal, we address it first.

## II

Over plaintiffs' objections, the district court gave the jury the following instruction:

> "Presumptions" are rules based on experience or public policy and are established in the law to assist the jury in ascertaining the truth.
>
> . . . .
>
> "State of the art" means the best technical, mechanical, and scientific knowledge and methods which are practical and available for use in the design, manufacturing, testing, inspecting, packaging and labeling of products in the same or similar industry for the same or similar products, for the purpose of providing for the quality and safety of such products.
>
> In this case, if you find that (1) prior to any sale by the Case Corporation, the 580–Super E Backhoe conformed to the state of the art, as distinguished from industry standards, and (2) such state of the art was applicable to such products as the 580–Super E Backhoe at the time of such sale, then the law presumes the 580–Super E Backhoe was not defective.
>
> You must consider this presumption together with all the other evidence in the case in determining whether or not the 580–Super E Backhoe was defective, the presumption may be rebuttal [sic] by presentation of a preponderance of evidence contrary to the presumption.

Appellants' App., Vol. II, Tab CC, Instruction No. 18. At the time, this was a pattern Colorado jury instruction. CJI–Civ.3d 14:24.[2] Plaintiffs contend that the instruction should not have been given because it unduly repeated and emphasized their burden of proof, was not warranted because the evidence did not support a finding that the loader/backhoe was state of the art, and included an incorrect definition of state of the art because it allowed the consideration of practicality in the design of the machine.

"In a diversity case, the substance of the jury instructions is determined by state law,

---

**2.** Under Colorado law, courts must use the pattern jury instructions " 'as are applicable to the evidence and the prevailing law.' " *Tafoya v.*

*Sears Roebuck & Co.* 884 F.2d 1330, 1336 (10th Cir.1989) (quoting Colo.R.Civ.P. 51.1(1)).

while the grant or denial of tendered instructions is governed by federal law." *Perlmutter v. United States Gypsum Co.*, 4 F.3d 864, 871–72 (10th Cir.1993). The substance of this instruction is based on the statutory presumptions contained in Colo.Rev.Stat. § 13–21–403 (1987), which states in part:

(1) In any product liability action, it shall be rebuttably presumed that the product which caused the injury, death, or property damage was not defective and that the manufacturer or seller thereof was not negligent if the product:

(a) Prior to sale by the manufacturer, conformed to the state of the art, as distinguished from industry standards, applicable to such product in existence at the time of sale;

. . . .

(3) Ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.

Instructions based on the state-of-the-art and ten-years-after-sale presumptions have been used and approved of, at least in theory, in many cases. *See, e.g., Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1331 (Colo.1986) (finding evidence of no prior claims involving product relevant to whether manufacturer entitled to instruction regarding ten-years-after-sale presumption); *Patterson v. Magna Am. Corp.*, 754 P.2d 1385, 1387 (Colo.Ct.App. 1988) (disapproving instruction on ten-year presumption because of insufficient evidence of date of manufacture); *Downing v. Overhead Door Corp.*, 707 P.2d 1027, 1031–32 (Colo.Ct.App.1985) (same).

However, in *Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198 (Colo.1992), the Colorado Supreme Court concluded that instructing the jury on the ten-years-after-sale presumption was reversible error. The court stated that regardless of whether a products case is grounded in strict liability or negligence, the plaintiff has the burden of proving the prod-

uct was defective. *Id.* at 205. Presumptions do not shift the burden of persuasion; thus,

because the plaintiff (the party against whom the presumption is directed) already has the burden of going forward with evidence in this case ... an instruction based on the statutory presumption of section 13–21–403(3) is meaningless.

If a plaintiff fails to present sufficient evidence that a product is defective, he cannot satisfy the burden of persuasion or establish a prima facie case and a court will direct a verdict for the defendant. On the other hand, a plaintiff who has presented sufficient evidence to defeat a motion for a directed verdict has necessarily rebutted the presumption of section 13–21–403(3). Therefore, no reason exists for a trial judge to instruct a jury on the statutory presumption of section 13–21–403(3).

*Id.* (footnotes omitted); *see also Perlmutter,* 4 F.3d at 875 (acknowledging rule).

In a diversity case such as this in which state law governs, we are bound by a state's highest court's interpretations of state law. *Perlmutter,* 4 F.3d at 869 n. 2. Though only the ten-years-after-sale presumption was at issue in *Mile Hi Concrete,* we conclude that the Colorado Supreme Court's logic and holding are equally applicable to the state-of-the-art presumption.[3] That presumption is also merely a rebuttable presumption directed against the plaintiff, and it should similarly disappear once the plaintiff presents a prima facie case and gets past a motion for directed verdict. In fact, *Mile Hi Concrete* criticized other courts, including this one, for misinterpreting dicta from one of its earlier cases by finding that any of the presumptions of section 13–21–403 were evidence:

In *Belle Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118, 126 n. 14 (Colo. 1983), we stated in a footnote that the presumption of section 13–21–403(1)(a) [the state-of-the-art presumption] "acts as rebuttable evidence of the non-defectiveness of any product which may be the subject of

---

**3.** We agree with plaintiffs that it is "regrettable" they did not bring *Mile Hi Concrete* to the district court's attention. They did argue its substance,

however, and that is adequate to preserve the issue for review.

a products liability action." We expressly noted in *Belle Bonfils*, however, that section 13–21–403(1)(a) was not at issue in the case before the court.

In our view, later courts have erred to the extent that they have used *Belle Bonfils* to suggest that the presumptions of section 13–21–403 are evidence. *See, e.g., Hawkinson v. A.H. Robins Co.*, 595 F.Supp. 1290, 1311 (D.Colo.1984) (suggesting that the presumptions established by section 13–21–403 are considered to be evidence of non-defectiveness based on *Belle Bonfils*); *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 83 (Colo.App.1986) (finding that the rebuttable presumption of section 13–21–403(1)(a) is to be considered as evidence based on *Belle Bonfils*); *see also Tafoya v. Sears, Roebuck & Co.*, 884 F.2d 1330, 1336 (10th Cir.1989) (quoting *Union Ins. Co.*).

842 P.2d at 206 n. 17.[4] Moreover, we note that the revised Colorado Jury Instructions (issued in February 1994, after the trial in this case) state that based on *Mile Hi Concrete*, the instruction containing the state-of-the-art presumption should no longer be given. CJI–Civ.3d 14:24 (Feb. 1994 Cum. Supp.).

■ We conclude that under Colorado law, as interpreted by the Colorado Supreme Court in *Mile Hi Concrete*, the district court erred in instructing the jury on the state-of-the-art presumption once it concluded that plaintiffs made their prima facie case. Because "[i]t is prejudicial error to give an erroneous instruction because the appellate court has no way of knowing to what extent the jury was misled," *Mile Hi Concrete*, 842 P.2d at 206, we must reverse and remand for a new trial.[5]

## III

■ Because several of plaintiffs' other contentions of error may arise again on retrial, we address them briefly. Plaintiffs argue that the district court erred by excluding evidence of similar accidents and inadvertent activation problems and by admitting evidence of the outcome of litigation involving another accident. We review the exclusion or admission of evidence for abuse of discretion. *Perlmutter*, 4 F.3d at 871.

■ Plaintiffs wanted to introduce evidence of accidents involving the inadvertent bumping or activation of loader/backhoe controls different from the control bumped in this case, and of controls on different types of machines. The district court excluded this evidence because it found the evidence only marginally relevant and because admitting it could confuse the jury. We cannot say that the court abused its discretion by excluding this evidence.

■ In addition, plaintiffs objected to the admission on cross-examination of testimony regarding a defense verdict in a lawsuit involving an allegedly similar accident. The district court allowed the testimony because plaintiffs had brought up the fact of the lawsuit on direct examination. Again, we cannot say that the court abused its discretion in allowing this evidence.

4. In *Tafoya*, relying on then-existing Colorado pattern jury instructions and Colorado case law, we affirmed the giving of jury instructions regarding the presumptions contained in section 13–21–403. 884 F.2d at 1335–37. We consider the Colorado Supreme Court's decision in *Mile Hi Concrete* and the revised Colorado Jury Instructions to overrule that aspect of our *Tafoya* decision.

5. Because we reverse on this ground, we need not address plaintiffs' contentions that that there was insufficient evidence that the loader/backhoe met state-of-the-art standards and that the definition of state of the art was incorrect. We note that the Colorado Supreme Court "[did] not hold that a defendant cannot introduce evidence that a product has been in use for more than ten years as evidence of nondefectiveness. Rather,

the presumption itself can not rise to the level of evidence." *Mile Hi Concrete*, 842 P.2d at 206 n. 16. It follows that evidence that a product met the state of the art at the time of manufacture and distribution is similarly still admissible to prove nondefectiveness.

Moreover, because this issue will likely reappear on retrial, we also note that a new definition of state of the art has been added to the pattern jury instructions, which reads: "A product is not defective and unreasonably dangerous if a particular risk was not known or knowable to the manufacturer in light of the generally recognized and prevailing scientific and technical knowledge available at the time of manufacture and distribution." CJI–Civ.3d 14:20A (Feb. 1994 Cum.Supp.).

1258

■ Finally, plaintiffs contend the district court erred by including an "open and obvious" defense in the jury instruction on failure to warn. The district court gave the jury the pattern instruction on failure to warn:

A product not otherwise defective in its manufacture or design becomes defective and unreasonably dangerous if it is not accompanied by sufficient warnings or instructions for use. To be sufficient, such warnings or instructions for use must adequately inform the ordinary user of any specific risk of harm which may be involved in an intended or reasonably expected use or any failure to properly follow instructions when using the product for intended or reasonably expected use.

However, if a specific risk of harm would be apparent to an ordinary user from the product itself, a warning of or instructions concerning that specific risk of harm is not required.

Appellants' App. Vol. II, Tab CC, Instruction No. 15; *see also* CJI–Civ.3d 14:20.

The key case in this area is *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo.1992). Building on its holding in *Camacho v. Honda Motor Co.*, 741 P.2d 1240 (Colo.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988), a strict liability case that found that "a duty to warn may exist where the danger is patent if such warning might reduce the risk of harm attendant upon use of the product," *id.* at 1248 n. 9, the Colorado Supreme Court in *Armentrout* stated:

The open and obvious nature of a risk is not necessarily a complete defense to a strict liability failure-to-warn claim. Rather, the obviousness of the danger and the efficacy of the proposed warning are factors which the trial court should consider in determining whether the defendant had a duty to warn an ordinary user in the plaintiff's position. If the danger is open and obvious, there is no duty to warn unless there is a substantial likelihood that the proposed warning would have prevented injury to the ordinary user. If the trial court finds the existence of a duty to warn under such circumstances, then a *Camacho*-based modification of the pattern instruction is appropriate.

*Armentrout*, 842 P.2d at 181. The court in *Armentrout* concluded that the pattern instruction did not need to be modified under the facts of that case because it was apparent that the proposed warning did not meet the *Camacho* efficacy test. *Id.* Though the court recognized "the trial court's well-established obligation to determine, as a matter of law, whether the defendant had a duty to warn the plaintiff," *id.*, it did not conclude that no failure-to-warn instruction should be given, but held rather that the "open and obvious" defense paragraph of the instruction need not be modified.

Relying on *Armentrout*, plaintiffs in this case proposed that the pattern instruction be modified to read that "if a danger of a specific risk of harm would be apparent to an ordinary user of the product, a warning of that specific risk is still required if there is a substantial likelihood that the proposed warning would have prevented injury to the ordinary user." Appellant's App., Vol. II, Tab EE. However, plaintiffs did not introduce any evidence of what type of warnings should have been provided, how the warnings should have communicated to Wagner, whether Wagner would have been affected by any warnings, or whether warnings would have prevented his injuries. *Cf. Armentrout*, 842 P.2d at 179–80 (finding no evidence that warning would have prevented plaintiff's injuries where crane operating manuals included warnings, operators and others doing plaintiff's job testified they were aware of dangers but routinely ignored them, and plaintiff testified that warning would not have affected the way he did his job).

Plaintiffs contend, however, that the fact that Case argued and introduced expert testimony that Wagner's employer and the operator had a duty to warn and that adequate warnings by them could have prevented Wagner's injuries, was sufficient to require modification of the instruction under *Armentrout*. In other words, plaintiffs essentially are arguing for judicial estoppel—that Case cannot on one hand contend that warnings given by someone other than itself would have been effective, but on the other contend that the danger was open and obvi-

ous and there was not a substantial likelihood warnings would have prevented injury.

The district court analyzed plaintiffs' proposed instruction and the evidence under the *Armentrout* standard and concluded that the evidence did not warrant modification of the instruction. We agree. Plaintiffs failed to present any evidence regarding the efficacy or specificity of the warnings they contend should have been provided. Their entire warnings argument—that is, who should have been warned of what, how that warning should have been communicated, and what effect it would have had—is simply too vague to justify their proposed instruction. The evidence and argument presented by Case are not enough on their own to warrant modifying the instruction under the facts of this case.[6]

REVERSED and REMANDED.

---

**6.** It would seem under *Armentrout* that once a court determines, as the district court did here, that there is not a substantial likelihood that a proposed warning would prevent injury to an ordinary user, there would be no duty to warn, and the court should not provide any instruction on the failure-to-warn theory. *See Armentrout,* 842 P.2d at 181. Under similar circumstances, however, *Armentrout* did not criticize the giving of the pattern failure-to-warn instruction; it said only that the "open and obvious" portion of the instruction need not be modified. *Id.*